```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

BRIAN OLIG, DAVID OLIG, and            )
JAMES OLIG and CANDACE OLIG, on        )
their own behalf and on behalf         )
of their minor son, NICHOLAS           )
OLIG, and their minor son,             )
BRADLEY OLIG,                          )
                                       )
            Plaintiffs                 )
                                       )
        v.                             )  Case No. 2: 08 cv 301
                                       )
CITY OF HOBART POLICE                  )
DEPARTMENT, HOBART POLICE              )
OFFICER PAUL OLIVER, HOBART            )
POLICE OFFICER MARK MOKRIS, and        )
HOBART POLICE OFFICER TIMOTHY          )
BURNEY,                                )
                                       )
            Defendants                 )

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 37] filed by the defendants, City of Hobart Police Department, Officer Paul Oliver, Officer Mark Mokris, and Officer Timothy Burney, on April 30, 2010. For the reasons set forth below, the motion is GRANTED.

### Background

On August 30, 2007, James Olig, his wife, Candace Olig, and their sons, David Olig and Brian Olig, were arrested and charged with disorderly conduct and resisting arrest by Officers Paul Oliver, Mark Mokris and Timothy Burney of the Hobart Police Department ("HPD"). (Comp. pp. 3-4; Mem. in Supp. of MSJ p. 4)

Candace Olig also was charged with two counts of assault and battery on Oliver. (HPD Booking Sheets 1-4) At the time of their booking, Candace Olig complained of back pain, and the police called an ambulance. Candace Olig was taken to St. Mary's Hospital in Hobart, Indiana. (Mem. in Supp. of MSJ at p. 4) James Olig did not complain of any injury, but David Olig complained of a swollen right pinky finger, and Brian Olig complained of a stiff neck. Both refused medical treatment. (Id.; HPD Booking Sheets 1, 3, 4)

On October 16, 2008, all four adult Oligs, together with James and Candace Oligs' two minor sons who witnessed the family members' arrests, filed suit against the HPD and Officers Oliver, Mokris, and Burney. (Comp. pg. 1) The Oligs alleged that the officers lacked probable cause to make the arrests and used excessive force in effectuating the arrests. The Oligs claimed violations under 42 U.S.C. §1983, as well as state law tort claims of battery, intentional infliction of emotional distress, assault, false arrest, and trespass by the officers, and negligent hiring, negligent retention of employees, and negligent infliction of emotional distress by the Hobart Police Department under the theory of respondeat superior.[1]

---

[1] The Complaint also claims jurisdiction under 42 U.S.C. §1981, but the statute forbidding race discrimination in contracts is not mentioned again by the Oligs, and the court cannot ascertain how it could apply to this matter.

In February 2010, following a series of discovery motions which were decided in the defendants' favor, the Oligs' attorney withdrew from the case. The Oligs did not obtain new counsel and proceeded pro se.

On April 30, 2010, the defendants filed a Motion for Summary Judgment with the required Timms Notice, warning the Oligs of the consequences of failing to respond. Nonetheless, the Oligs did not respond to the motion. The Oligs also did not attend a status conference scheduled by this court for June 17, 2010.

The circumstances surrounding the Oligs' arrests on August 30, 2007, as portrayed by the Complaint are in sharp contrast to the evidence provided by the defendants in support of summary judgment. All agree that James Olig called the HPD dispatch emergency number on August 30, 2007, to report a reckless driver near his home. (Memo. in Supp. of MSJ, p. 1; Comp. p. 3) The HPD reports that it dispatched Mokris to the area. Mokris saw David Olig and asked him for a description of the driver or assistance in locating the vehicle, but David Olig refused. Mokris later received information about the vehicle and driver from a passerby.

In the interim, James Olig placed a second call to the HPD emergency dispatch complaining about the police response to his first call and requesting a supervisor. Mokris arrived at the sidewalk outside the Olig home, as did Burney and Oliver, the

supervisor. The officers testified that they repeatedly asked for any information about the emergency call and that James Olig yelled at them, complaining about the manner in which the Police Department and the Fire Department responded to this and other service calls that James Olig had placed in the past.

Oliver advised James Olig to quiet down and to go into his home because he was disturbing his neighbors. The officers report seeing porch lights being lit in some nearby homes and residents either looking through curtains or coming out to their porches during the confrontation. (Dep. of Timothy Burney, pp. 20-22) After repeated and unheeded warnings to quiet down, Oliver advised James Olig that he was under arrest and asked to see his identification. James Olig then stated that he was not going to be arrested, that no one was, and that he and his family were going to go back into their home. (Dep. of Paul Oliver, pp. 22-23)

Oliver states that he entered the property to arrest James Olig, who resisted and attempted to flee into his home, and that he needed the assistance of Mokris to complete the arrest. Burney states that Brian Olig moved to interfere with Oliver during the arrest and that Burney struggled with and arrested Brian Olig. Mokris states that David Olig and Candace Olig also approached and attempted to interfere with Oliver as he arrested James Olig, that Oliver pushed David Olig away, and that David

4

Olig fell onto Candace Olig. As Oliver and Mokris arrested David Olig, Candace Olig struck Oliver three times on the head while he was in a kneeling position. Oliver pushed Candace Olig backwards, but she approached him again. Oliver drew his handgun, pointed it at Candace Olig, then re-holstered it when she stopped her approach, although she continued to yell at the officers. Oliver arrested Candace Olig.

The defendants' expert witness, Darrell L. Ross, Ph.D., reviewed the documents in the case as well as home surveillance video produced by the Oligs and determined that the officers' response to the emergency call was correct, that they were obstructed from investigating the complaint by the Oligs' refusal to provide information, that the decision to arrest was reasonable, and that the officers used appropriate force to effect the arrest and defend themselves. (Prelim. Ops. Report of Darrell L. Ross, Ph.D., ¶¶5-6; 14-15)

The defendants also submitted as evidence: Hobart Police Department General Order 93-17, outlining procedures and guidelines related to the use of force during an arrest and avoidance of excessive force; Hobart Police Department Rules and Regulations Section II: Department Mission, Vision and Values; and the Affidavit of Brian K. Snedecor, Chief of Police from November 15, 2001 and through the date of the Oligs' arrests on August 30, 2007. Snedecor stated that he was familiar with the officers'

hiring, training, and job performance through the night of the Oligs' arrest. Snedecor further stated that all of the officers had completed the required training related to making arrests with probable cause and the appropriate use of force in making arrests. Snedecor added that all of the officers had received the required continuing education and training related to their duties and that he was unaware of any previous incidents in which any of the officers were alleged to have made an arrest without probable cause or used unreasonable force in making an arrest.

The Oligs claim that James Olig tried to provide helpful evidence to the officers, that while he was speaking with the officers, James Olig decided that he and his family should return to their home, that their path was obstructed by Oliver, who then struck Candace Olig without justification. (Comp. at p. 4) The Oligs allege in their complaint that after Oliver struck Candace Olig, all three officers began battering the four adult Oligs and arrested them without cause, all within view of the two minor Oligs. (Id.) Because the Oligs did not respond to the Motion for Summary Judgment, they have offered no evidence to support these allegations.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is

6

entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Williams v. Excel Foundry & Machine, Inc., 489 F.3d 309, 310 (7th Cir. 2007); Treadwell v. Office of the Illinois Secretary of State, 455 F.3d 778, 781 (7th Cir. 2006); Branham v. Snow, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Lawrence v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); Ballance v. City of Springfield, Illinois Police Department, 424 F.3d 614, 616 (7th Cir. 2005); Hottenroth v. Village of Slinger, 388 F.3d 1015, 1027 (7th Cir. 2004); Palmer v. Marion County, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004); Hines v. British Steel Corporation, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." Roger v.

7

Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994). See also Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999); Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 346 (7th Cir. 1997); United Association of Black Landscapers v. City of Milwaukee, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> . . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); Argyropoulos v. City of Alton,

539 F.3d 724, 732 (7th Cir. 2008)(stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party); Branham, 392 F.3d at 901 (same); Lawrence, 391 F.3d at 841 (same); Hottenroth, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003) (same).

"As a pro se litigant, [a] [p]laintiff is permitted a more lenient standard with respect to her pleadings than that imposed on a practicing attorney." Cintron v. St. Gobain Abbrassives, Inc., 2004 WL 3142556, *1 (S.D. Ind. Nov. 18, 2004). Although the court recognizes that pro se litigants face special challenges that litigants represented by counsel do not, pro se litigants are not excused from following procedural rules simply because the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers." Lee v. Wal-Mart Stores, 1994 WL 899240, *1 (N.D. Ind. Apr. 12, 1994). The Lee court explains,

> [the court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mis-

> takes by those who proceed without counsel. As we have noted before, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law."
>
> Lee, 1994 WL 899240 at *1 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980))

A defendant filing a motion for summary judgment must warn a pro se plaintiff of the consequences of failing to respond to the motion. Timms v. Frank, 953 F.2d 281, 285 (7th Cir. 1992). The notice must include a short statement informing the plaintiff that all factual assertions made by the defendant will be taken as true should the plaintiff fail to respond. Id. The defendants served a proper Timms notice to the Oligs on April 30, 2010. Pursuant to Local Rule 56.1(a), the Oligs had 30 days to respond. The 30-day period expired on May 30, 2010, without a response from any of the Oligs. The Oligs have waived their right to contest the defendants' Motion for Summary Judgment. Despite the Oligs' failure to respond, this court still must determine whether the defendants are entitled to summary judgment as a matter of law.

The HPD, as a municipality, cannot be held liable under a respondeat superior theory for constitutional violations committed by its employees. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

See also Wragg v. Vill. of Thornton, 604 F.3d 464, 467 (7th Cir. 2010)(quoting Monell). Case law recognizes three ways in which a municipality's policy can violate an individual's civil rights:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. (internal citations and quotes omitted)
>
> Baxter by Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734-35 (7th Cir. 1994)

See also Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005)(stating same); Lawrence v. Kenosha County, 391 F.3d 837, 844 (7th Cir. 2004)(stating same); Killinger v. Johnson, 389 F.3d 765, 771 (7th Cir. 2004)(stating same); Franklin v. City of Evanston, 384 F.3d 838, 843 (7th Cir. 2004)(stating same).

The Oligs have not submitted any evidence regarding any express policies of the HPD and have not established a causal link between any HPD policy and their alleged constitutional deprivation. Defendants, in contrast, have submitted the Hobart Police Department Rules & Regulations, Section II, Department Mission, Vision, and Values Statement which expressly states that it is the policy and practice of the HPD to treat every person with fairness and to do the job with integrity. The Oligs also did not present evidence of any widespread practice of the HPD

which caused their alleged constitutional injury. The Oligs provided only bare, conclusory statements in their Complaint alleging that the officers violated their rights by arresting them without cause and battering them, concluding that the HPD is liable for these actions by respondeat superior theory. Even if the officers' conduct that evening was unconstitutional, it would not have been sufficient to establish a permanent or well-settled custom or usage by the HPD. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). The Oligs do not advance an argument that an individual with final policy making authority within the HPD caused their injuries. See Belcher v. Norton, 497 F.3d 742, 754 (7th Cir. 2007)(finding municipality not liable under theory of respondeat superior for the actions of its deputy marshal because the deputy marshal was not a final policymaker for the municipality.). None of the officers on the scene of the Oligs' arrest had final policy making authority for the HPD, and the Oligs did not assert that any other member of the HPD caused any of the Oligs' alleged constitutional injuries.

The Oligs also allege that the officers, as individuals, violated their constitutional rights by applying excessive force and making a false arrest. The use of force is gauged according to a Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The officer's intent in using force is not relevant, and instead, the court looks objectively to the facts and circumstances confronting the officers when the use of force was administered. Richman v. Sheahan, 512 F.3d 876, 882 (7th Cir. 2008). The reasonableness of the force used is judged from the perspective of the officer and asks whether the officer "used greater force than was necessary to make the arrest." Payne v. Pauley, 337 F.3d 767, 778 (7th Cir. 2003). "[P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

Similarly, the existence of probable cause precludes a §1983 suit for false arrest. See Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 762 (7th Cir. 2006); Morfin v. City of East Chicago, 349 F.3d 989, 997 (7th Cir. 2003); Ochana v. Flores, 347 F.3d 266 (7th Cir. 2003). Probable cause is a fluid concept. An

13

arrest is supported by probable cause if, at the time of the arrest, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed a crime. Spiegal v. Cortese, 196 F.3d 717, 725 n.1 (7th Cir. 1999). See also Edwards v. Cabrera, 58 F.3d 290, 292 (7th Cir. 1995). "Probable cause is a commonsense determination, measured under a reasonableness standard." Gower v. Vercler, 377 F.3d 661, 668 (7th Cir. 2004). In deciding whether probable cause exists, law enforcement officers are entitled to draw reasonable inferences based on their own training and experience. United States v. Carrillo, 269 F.3d 761, 766 (7th Cir. 2001). The Constitution does not require an arresting officer to conduct an incredibly detailed investigation at the probable cause stage. Spiegal, 196 F.3d at 724-25. "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." United States v. Funches, 327 F.3d 582, 586 (7th Cir. 2003) (internal quotations omitted). Once an officer has trustworthy information that leads him to reasonably believe that probable cause exists, he is entitled to rely on that information and is under no further duty

to investigate. Beauchamp v. City of Noblesville, Indiana, 320 F.3d 733 (7th Cir. 2003).

Under both claims, the officers have raised the defense of qualified immunity. Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it. Molina ex rel. Molina v. Cooper, 325 F.3d 963, 968 (7th Cir. 2003). Whether a defendant is entitled to qualified immunity is a two-step analysis. The court first must determine whether the facts show that the defendant's conduct violated a constitutional right. If so, the focus turns to whether that right was clearly established at the time of the alleged injury, such that a reasonable officer would understand that his actions were in violation of that right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Qualified immunity provides ample protection to police officers preparing a probable cause affidavit except where the law is knowingly violated or the officer was plainly incompetent when doing so. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The determination of whether individual defendants are immune from liability is a decision for the court, rather than for a jury. Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989).

The Oligs failed to meet their burden to overcome the defense of qualified immunity. The Oligs have not shown how the officers' actions were unreasonable in light of the clearly

established law.  Rather, the uncontroverted facts that James Olig continued to be belligerent after Oliver told him to quiet down, that the Oligs attempted to move away from Oliver and the other officers when James Olig was told he was under arrest, that James Olig physically resisted being detained, that the other Oligs attempted to physically intervene in the arrest of James Olig, and that Candace Olig struck Oliver, show that the officers' applications of force were reasonable in relation to the perceived threat.  Because the officers personally observed the Oligs engaging in these actions that clearly violate Indiana's disorderly conduct and resisting law enforcement statutes, the officers had probable cause to arrest the Oligs.  Furthermore, the Olig's failed to make any showing beyond the allegations pled in their complaint to overcome the officers' qualified immunity defense and demonstrate that the officers' actions were unreasonable, and because a party cannot rest on their pleadings at the summary judgment stage of litigation, the officers' motion for summary judgment must be granted in their favor.

Accordingly, the Oligs cannot show that their constitutional rights were violated by the actions of a municipal entity of a police officer.  Their claims under 42 U.S.C. §1983 fail.  As a result of the dismissal of all of the Oligs' federal claims for which original jurisdiction exists, this court will not address the pendant state law claims.  See Golden Years Homestead, Inc.

v. Buckland, 557 F.3d 457, 462 (7th Cir. 2009)(discussing the general rule in this circuit that when the federal claim drops out before trial, the federal district court should relinquish jurisdiction over the supplemental claim); Hansen v. Board Of Trustees of Hamilton Southeastern School Corp., 551 F.3d 599, 608 (7th Cir. 2008)("The district court has broad discretion in deciding whether to retain supplemental claims.")(citing Van Harken v. City of Chicago, 103 F.3d 1346, 1354 (7th Cir. 1997)); Wright v. Associated Ins. Companies, Inc., 29 F.3d 1244, 1251 (7th Cir. 1994)(explaining the general rule under 28 U.S.C. §1367(c)(3) as well as the exceptions, none of which apply here)(citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

_____

For these reasons, the Motion for Summary Judgment filed by the defendants, Hobart Police Department, Officer Paul Oliver, Officer Mark Mokris, and Officer Timothy Burney, on April 30, 2010, is GRANTED for the claims under 42 U.S.C. §1983 and 42 U.S.C. §1981. As there are no surviving federal claims, the remaining state law claims are DISMISSED WITHOUT PREJUDICE.

ENTERED this 30th day of September, 2010

                                   s/ ANDREW P. RODOVICH
                                      United States Magistrate Judge